## M. A. FAY v. R. A. SULLENS.

(Filed February 11, 1905.)

AGENCY—Sale of Real Estate. A letter, in order to create an agency to sell real estate, must be specific and certain in its terms, and a mere inquiry by an owner of realty, addressed to a real estate agent as to whether a certain price could not be obtained for a city lot, is not sufficient to create the latter an agent of the owner and empower him to make sale of the premises at the given price after the lapse of four months from the date of the letter.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell Trial Judge.*

No appearance for plaintiff in error.

*Beaty & Jobson* and *H. H. Howard,* for defendant in error.

Opinion of the court by

GILLETTE, J.: In this action the plaintiff seeks to compel the specific performance of a contract for the sale of real estate, or, if that cannot be done, damages for its nonperformance.

The petition alleges "that on the 17th day of December, 1900, defendant was the owner of lots No. 15 and 16 in block 10, south, Oklahoma addition to Oklahoma City, and that on that day one W. M. Smith was the agent of R. A. Sullens for the sale of said lots, and his authority to sell said land was in writing * * * signed by said Sullens, and

that on said date plaintiff purchased said lots from de-
fendant through his said agent, W. M. Smith for the con-
sideration of $700.00, $25.00 being paid down and balance of
$675 to be paid as soon as defendant should execute a deed
and furnish abstract of title," etc.

Plaintiff paid to Smith $25.00 and thereafter tendered
to him the remaining $675.00, the balance of the consider-
ation. At the time of making the tender and demand for
deed, plaintiff was informed by Smith that. Sullen had re-
fused to recognize his (Smith's) authority to make a sale
of said lots, and refused to execute a deed thereto, and he
(Smith) thereupon offered to return to plaintiff the $25.00
already received by him to apply thereon.

Defendant answered admitting the ownership of the
lots, but denied any right or authority in Smith as his agent
or otherwise to make any sale of said lots, etc.

At the September term, 1903, the case came on for
trial upon the issues so framed.

It will be seen from the foregoing statements that the
real issue to be determined in the case was the agency of
Smith, and his authority to bind the defendant in the
transaction.

On the trial of the case Mrs. Fay, the plaintiff, was
called as a witness in her own behalf, and among other
things testified as follows:

"Q. Mrs. Fay, at the time you were in there talking
to Mr. Smith, as you say, when this instrument was exe-
cuted (referring to Ex. "A") did Mr. Smith read you any
letters?

"A. Yes, sir.

"Q. Have you that letter?

"A. No. sir, he took it and read it himself.

"Q.   Did he give you possession of it?

"A.   No, sir, he handed it to me but I could not read it. * * *

"Q.   And did Mr. Smith let you have that letter?

"A.   No, sir.

"Q.   Do you know where that letter is now?

"A.   No, sir, he didn't give it to me.

"Q.   Now can you state substantially the contents of that letter?"

Objected to and the objection sustained. This ruling of the trial court is. alleged as error. At the time this evidence was offered there was no evidence before the court either embodied in any question or otherwise to indicate who the letter was written by, to whom it was addressed or what subject it related to. On the examination of Smith on the part of the plaintiff, he was handed Exhibit "A", and asked:

"Q.   Did you execute that?

"A.   Yes, sir.  ·

"Q.   Under what authority did you execute this paper?

"A.   Why, Mr. Sullens had written me a letter, probably it might have been three or four months previous to this time, speaking of selling the property for $700.00 and I still presumed that I could sell it for that figure.

"Q.   Where is that letter, Mr. Smitih?

"A.   Well, unfortunately, I have lost it.

"Q.   Can you state the substance of the contents of that letter?

"A.   Well, the letter was merely a question asking me—he said that he would take $700.00 if—

"* * * Q.   (By the Court.) Did Mr. Sullens tell you in that letter that you were authorized to sell it for $700.00?

"A.   My recollection of the letter is this—I can't come at it hardly; he merely wrote in his letter—I asked him—

"Q. How did he come to write you this letter?

"A. Because I had written him previously three or four times; I was trying to sell the property.

"Q. Asking him what he would take for the property?

"A. Yes, sir.

"Q. Now, what did he say?

"A. He asked me the question in there, could I get $700 for the property. * * *

"Q. What else did he say?

"A. That is about all there was in the letter.

"Q. Did he say in that letter 'you can sell it for $700?'

"A. No, sir, he didn't positively state that in the letter.

"Q. Did he say to you that you were authorized to execute a contract for him?

"A. No, sir, he didn't. * * *

"Q. The substance of the letter was that he would take $700 for the lots?

"A. Yes, sir, the letter conveyed the impression to me that I might sell them for that.

"Q. Did he say I will take $700 for it?

"A. Yes, sir, he stated he would take $700.

"Q. You had already asked him what he would take?

"A. Yes, sir, frequently.

"Q. And his answer was 'I will take $700'?

"A. Yes, sir, that is my impression of the letter.

"Q. Now, that is the only communication you had with him in which he stated what he would take for the lots?

"A. Yes, sir."

The Exhibit "A" referred to is as follows:

"Oklahoma City, Dec. 17, 1900.—Received of Mrs. M. A. Fay, twenty-five dollars in part purchase money on lots 15 and 16 in block 10, South Oklahoma, O. T., the full consideration being $700.00. Deed and abstract taxes ;paid and title to be clear; warranty deed, unless so no title passes.

"W. M. SMITH, Agent."

On cross examination the witness was further asked:

"Q. About how long do you say it was after you got the letter from Mr. Sullens saying or asking you if you could get him $700.00, or that he would take $700, prior to the time that you made this sale to Mrs. Fay?

"A. I would say it was at least between 3 and 4 months prior to that time."

This is the substance of all the evidence offered to establish the agency of Smith to make the sale of the premises in controversy belonging to defendant Sullens, and we think this falls far short of establishing any right or authority in Smith to make a contract binding on Sullens for the sale of real estate belonging to Sullens, under any rules of agency or otherwise. The action being one for specific performance of a contract, it is manifest there must be a contract before performance can be enforced. Whether there was or not in this instance depends entirely upon the authority of Smith to enter into a contract binding upon defendant, since it is not claimed that defendant in person ever had any business relations with plaintiff. At the utmost it cannot be claimed that the letter to Smith amounted to more than an authority to make a sale of the premises at the price of $700. At the time it was made it was simply a present offer to sell at a given price, and subject to be changed or repudiated at any time thereafter by the vendor, and the evidence clearly shows that from three to four months elapsed after this offer and price were made before any attempt was made to comply with its terms, even if it be assumed that there was a *bona fide* intent on the part of Smith to sell and remit the full $700 to defendant, which fact, however is not shown by the evidence. Smith testifies that he only intended to remit $650 to Sullens retaining $50 for hs own compensation, and there

is no evidence that Sullens ever intended or offered to accept any sum less than $700 for the premises. Had Smith immediately replied to this letter enclosing $700, and demanding the execution of a deed, a quite different case would be presented. Even then the evidence of the import of the letter to Smith would be so indefinite and uncertain as to hardly warrant a court of equity in compelling a conveyance by Sullens. An inquiry as to whether a real estate agent could not get $700 for premises, is not tantamount to an offer to accept $700, and convey the same on receipt of that amount; much less is it direct authority creating an agency for the sale of the premises at that price. In any event the offer would require acceptance within a reasonable time, and three or four months thereafter is not a reasonable time. The receipt (Exhibit "A") given by the pretended agent to plaintiff, informed her that the transaction was conditional, rather than an authorized actual sale; and not being authorized, it had no binding force or effect upon the defendant.

"A judgment is the decision or sentence of the law." (Ency. Pl. & Prac. vol. 11, 808.)

"A judgment must also conform to and be sustained by the evidence or proofs adduced." (*Ibid* p. 870).

There was not sufficient evidence on the part of the plaintiff to support a judgment in her favor, and it therefore became the duty of the court on the oral demurrer of the defendant to take the case from the jury and render judgment against her for the costs of the action.

Finding no error in the record and proceedings the judgment of the court below will be affirmed.

Burwell, J., who presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.